336 So.2d 170 (1976)
David E. WEBSTER et al.
v.
James O. GUNTER et al.
SC 1578.
Supreme Court of Alabama.
July 30, 1976.
Kenneth L. Funderburk, Phenix City, for appellants.
Cornett & Perdue, Phenix City, for appellees.
JONES, Justice.
Mr. and Mrs. Webster appeal from an order of the Circuit Court of Russell County *171 granting summary judgment against them. We reverse and remand.
On March 8, 1973, the Websters filed a bill in equity against the Gunters, seeking specific performance of a contract for the sale of land. Equitable relief was denied. On appeal to this Court, the trial Court was affirmed because of the reluctance of this Court to reverse an order based on the exercise of discretionary powers of the equity court. The majority of this Court reasoned that the trial Court's discretion had not been abused due to the "uncertainty of description" issue made out by the evidence. See Webster v. Gunter, 293 Ala. 282, 302 So.2d 97 (1974).
Subsequent to the affirmance of the judgment of the trial Court in Webster, the Websters, on November 20, 1974, filed a suit at law against the Gunters, alleging damages for breach of contract.
We note at the outset that the original case was filed as a bill in equity, seeking purely equitable relief of specific performance, prior to the effective date of the Alabama Rules of Civil Procedure which merged the courts of law and equity. Whether this procedural change would have effected a different result had the original suit been filed on or subsequent to July 3, 1973, we need not decide.
We agree with the appellant's statement of the issue here presented:
"Where a Plaintiff filed a Complaint before the new Alabama Rules of Civil Procedure took effect, seeking only equitable relief in the form of `Specific Performance' of a real estate sales contract and the Court denied all equitable relief sought, is the Plaintiff prohibited by the rule of res judicata from bringing any subsequent action for damages for the breach of the same contract?"
No inference is to be drawn from the phrase "before the new Alabama Rules of Civil Procedure took effect" that we would or would not reach the same result absent this phrase. We note this fact because the substantive law hereinafter set out is based in substantial part on the separation of the law and equity sides of the court.
The legal premise on which the substantive law dispositive of this issue is grounded is stated in Mialhi v. Lassabe, 4 Ala. 712, 714 (1843):
"Ordinarily, when a bill is filed for a specific performance and it is dismissed, nothing more is settled by the decree, than that the case is one in which equity will not interpose its extra-ordinary powers."
This Court, in the recent case of Rhyne v. Martin, 292 Ala. 163, 290 So.2d 650 (1974), quoted from 1 Pomeroy's Equity Juris-Prudence, 5th Ed. Section 237d, p. 436:
"The doctrine that equity, having once become possessed of a cause, will retain it for the purpose of administering full and complete relief, does not apply when the facts relied on to sustain the equity jurisdiction fail of establishment. The award of mere compensatory damages, which are almost always unliquidated, is a remedy peculiarly belonging to the province of the law courts, requiring the aid of a jury in their assessment, and inappropriate to the judicial position and functions of a chancellor. It may be stated, therefore, as a general proposition, that a court of equity declines the jurisdiction to grant mere compensatory damages, when they are not given in addition to or as an incident of some other special equitable relief, unless under special circumstances the exercise of such jurisdiction may be requisite to promote the ends of justice. This is especially true where such a course would operate to deprive a party of his constitutional right of a trial by jury."
From this premise, then, evolved the legal doctrine (last reaffirmed in Rhyne) which has been in effect in Alabama since at least 1845:
Where equitable relief which is the basis of the complaint is denied, the court cannot retain jurisdiction and grant relief available at law. City of Huntsville v. Miller, 271 Ala. 687, 127 So.2d 606 (1958); *172 Joiner v. Brightwell, 253 Ala. 569, 45 So.2d 709 (1950); Pritchett v. Wade, 261 Ala. 156, 73 So.2d 533 (1954); Nelson v. Lee, 53 So. 1023 (Ala.1910); Pond v. Lockwood, 8 Ala. 669 (1845).
It follows, therefore, that the case in equity is not res judicata to the subsequent case at law for damages, particularly where the trial Court's denial of equitable relief is affirmed as not constituting an abuse of discretion for not interposing its extraordinary powers. See Dekle v. Vann, 284 Ala. 142, 223 So.2d 30 (1969).
REVERSED AND REMANDED.
HEFLIN, C. J., and BLOODWORTH, ALMON and SHORES, JJ., concur.
MADDOX, FAULKNER, EMBRY and BEATTY, JJ., dissent.
ALMON, Justice (concurring specially):
"The doctrine of res judicata . . . embodies two main rules which may be stated as follows: (1) The judgment or decree of a court of competent jurisdiction on the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal . . . .
(2) Any right, fact, or matter in issue, and directly adjudicated on, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered on the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether or not the claim or demand, purpose, or subject matter of the two suits is the same. . . ." 50 C.J.S. Judgments § 592, p. 11.
The distinction between the two rules is of importance in this case as it appears to explain the difference between the majority and the dissent. For clarity, I shall call the first rule "res judicata" and the second, "collateral estoppel." The opinion of the majority is framed in terms of the first rule, res judicata, while the dissent's opinion is framed in terms of the second, collateral estoppel.
The majority stated the issue as follows:
"Where a plaintiff filed a Complaint. . . seeking only equitable relief in the form of `Specific Performance' of a real estate sales contract and the Court denied all equitable relief sought, is the Plaintiff prohibited by the rule of res judicata from bringing any subsequent action for damages for the breach of the same contract?"
As explained by Justice Jones, Rhyne v. Martin, supra, as well as the other cases cited, disposes of this issue. In Alabama, when equitable relief is denied, a court of equity may not grant relief available at law. Thus, Webster is not precluded by "res judicata" from a second action for damages based on contract. However, that does not answer the question of whether Webster is precluded by the doctrine of "collateral estoppel," a question to which the dissent is addressed.
To clarify this question, I shall separate it into two questions, both of which have to be answered in the affirmative for the doctrine of collateral estoppel to apply. (1) Was the decision in Webster v. Gunter, supra, (Webster-1) rendered on the issue of certainty of description? (2) Is the issue of certainty of a description in regard to an action for specific performance the same as the issue of certainty of description in an action for breach of contract? (The rule of res judicata (collateral estoppel) is confined to those cases where parties to the two suits are the same, subject matter is the same, the identical point is directly in issue and the judgment must be rendered on that point. Byrd v. Fowler, 50 Ala.App. 596, 281 So.2d 647 (1973). Ivey v. Wiggins, 271 Ala. 610, 126 So.2d 469 (1961).)
One of the trial judge's findings of fact was "that the description of the land to be conveyed, as to location, is uncertain." Webster, supra, 293 Ala. at 287, 302 So.2d 97, 100. Another of his findings of fact was "that the contract is impossible for the defendants to perform as to quantity and *173 quality of title." Id. at 287, 302 So.2d 97, 100.
"Defendants cannot convey more than an undivided one-half interest in and to the 199 acres of any part thereof. The owner of the remaining undivided one-half interest is unwilling to convey any part of her interest to the 199 acres, or any part thereof." Id. at 287, 302 So.2d 97, 100.
The court also found "that the lien holder [mortgagee] is unwilling to release any part of the 199 acres, without payment in full of the unpaid mortgage balance due." Id. at 287, 302 So.2d 97, 100. In this regard, the trial judge added the following:
"This Court cannot, therefore, order the defendants to convey a fee simple title. The Supreme Court in the case cited above Citronelle Turpentine Co. v. Buglig, 184 Ala. 404, 63 So. 951 (1913) speaking to this point stated:
"`Where defendant cannot perform a contract without obtaining the consent of a third person, who is free to withhold his consent, and does withhold it, the decree will not be made.'" Id. 293 Ala. at 287, 302 So.2d 97, 100.
The original request for specific performance was for 70 acres in fee simple. For a decree of specific performance to have been made, the best the judge could have done would have been to order a conveyance of a one-half interest in 66.6 acres together with a further order that the seller of this onehalf interest pay the mortgage held on the whole interest in 199 acres, of which the half interest in 66.6 acres was a partand this is true even assuming that the land description was sufficient.
To the above findings the trial judge added the following law:
"The right to specifically enforce the performance of a contract is not absolute. Its enforcement in a measure, at least, rests in the sound discretion of the court, a judicial discretion, of course, to be exercised according to the principles of equity. It has been held that contracts which will be thus enforced must be fair, must be reasonable, and must be just, and not attended with excessive hardships or injustice. Courts of equity have frequently refused to enforce contracts when it appeared that they were founded on mistake or surprise to such an extent that their enforcement would be equitable." Id. at 287, 302 So.2d 97, 101.
The case of Ivey v. Wiggins, 271 Ala. 610, 126 So.2d 469 (1961) illustrates why the decision in Webster, supra, was not necessarily rendered on the issue of certainty of description. Ivey is a wrongful death action against the driver-appellee of the vehicle which collided with an automobile in which plaintiff's intestate was riding. The complaint charged negligence and wanton misconduct. In a prior suit the appellant had sued the appellee's alleged employer. At the trial of the prior suit the jury found a general verdict for the employer. The issue in Ivey v. Wiggins, (Ivey-2) was whether the prior action against the alleged employer was a bar to an action against Wiggins, the alleged employee. The court held that it was not.
In Ivey-1 the issues were (1) whether there was an employer-employee relationship, and (2) whether the employee had been negligent. The general verdict for the employer indicated that either there was no employee-employer relationship or that there was no negligence by the employee, or that neither of these issues could be answered in the affirmative; however, the court could not determine which of these possibilities the decision was rendered on. Such being the case, it could not say that the judgment was rendered on the issue of the alleged employee's negligence. Hence, the doctrine of collateral estoppel did not bar Ivey-2.
For the doctrine of collateral estoppel to apply in Webster-2, the decision in Webster-1 must have been rendered on the issue of whether the land description was certain. The judge in Webster-1 made three findings of fact, two of which would be irrelevant in a court of law, then rendered his judgment on the judicial discretion granted a court of equity. One of the *174 findings of fact was that the description of the land was uncertain, but making a finding fact is not the same as rendering a decision on that issue.
The judge, sitting as a court of equity, rested his decision on the "sound discretion of the court." He concluded that this was not an equitable contract; it was not a contract which is "fair, . . . ., reasonable,. . ., just, and not attended with excessive hardships or injustice." In other words, his decision was based on all three findings of fact, rolled into the concept of judicial discretiona pinch of this and a dash of that.
In Ivey-2 the court could not decide what issue the judgment had been rendered on. Similarly, one cannot say that the judgment in Webster-1 was rendered on the issue of the certainty of the land description; the trial judge could have reached the same conclusion even if he had found that the land description was certain.
The second question is whether the issue of certainty of description in regard to an action for specific performance is the same as the issue of certainty of description in an action for breach of contract. Ordinarily, they would be the same. Alabama Mineral Land Co. v. Jackson, 121 Ala. 172, 25 So. 709 (1898). However, having concluded that the answer to the first question is in the negative, this question need not be addressed.
FAULKNER, Justice (dissenting).
I respectfully dissent.
In the words of a famous American comedian, "It [the majority opinion] just don't look right to me."
The dispute in this case arose over this provision of the contract:
"THIS AGREEMENT: made and entered into this 6th day of January, 1973.
"WITNESSETH: . . . Seller. . . agrees to sell; and . . . purchaser agrees to purchase . . . approximately 70 acres from Lot # 5, in the South West Quarter of 25, being in township 17 and range 27 of Russell County, Alabama."
There is no provision in the contract designating who will determine which 70 acres is to be sold, nor is there any reference to something outside the contract where certainty may be attained. This court said in Alabama Mineral Land Co. v. Jackson, 121 Ala. 172, 25 So. 709 (1898):
"Under the statute of frauds the written agreement or memorandum must describe the subject-matter directly, or by reference to something outside of the writing, by resorting to which certainty may be attained.
* * * * * *
"A contract which is so uncertain in respect to its subject-matter that it neither identifies the thing by describing it, nor furnishes any data by which certainty of identification can be attained, is void as well at law as in equity, and is incapable of supporting a bill for specific performance."
Proceeding to the question of res judicata, I find that uncertainty of the description was the principal issue in the equity case, and it will necessarily be the principal issue in the suit at law. That issue has been adjudicated and upheld in Webster. It cannot be relitigated. Corinth Bank & Trust Co. v. Lawler, 218 Ala. 83, 117 So. 620 (1928). Here I note the parties are the same; the subject matter is the same; the same point is directly in question, and judgment has been rendered on that point. Thus, res judicata applies. Bryan v. W. T. Smith Lumber Co., 278 Ala. 538, 179 So.2d 287 (1965); Ivey v. Wiggins, 271 Ala. 610, 126 So.2d 469 (1961); Byrd v. Fowler, 50 Ala.App. 596, 281 So.2d 647 (1973). There is no difference in the proper application of the doctrine of res judicata between a judgment at law and a decree in equity. Sims v. City of Birmingham, 254 Ala. 598, 49 So.2d 302 (1950).